STATE *ex rel.* BUDDY TAYLOR, *as Chairman, et al.*

*v.*

THE COUNTY COURT OF MINGO COUNTY, *etc., et al.*

(No. 13006)

Submitted October 21, 1970.     Decided October 27, 1970.

Opinion filed November 10, 1970.

*Camper & Watson, Harry G. Camper, Jr., Wade T. Watson,* for relators.

*Slaven, Staker & Smith, Zane Grey Staker, Ronald J. Rumora, John M. Richardson,* for respondents.

BROWNING, PRESIDENT:

This is an original proceeding in mandamus instituted in the name of the State of West Virginia at the relation of Buddy Taylor, as Chairman of the Mingo County Republican Executive Committee and in his own right, Jean S. Jewell, as Secretary of the committee and in her own right, and Jesse Farley, Sr., Ruby Deeley, W. B. Maynard, Billie E. Gibson, Juanita Clay, Causby J. Stanley, John F. Kirk and Louis M. Parks, each as a member of the committee and in his or her own right, against the Mingo County Court, W. A. Myers, Sr., as President of the court, and John P. Justice and C. J. (Ben) Hamilton, Commissioners of the court.

This dispute arises out of the selection of Republican election officials for the November 3, 1970, general election in Mingo County. Relator Taylor is the duly elected Chairman of the county Republican Executive Committee and seeks to compel the Mingo County Court to appoint individuals nominated by a meeting of some of the committee members, which meeting was presided over by Taylor. On September 23, 1970, Taylor gave notice of an official meeting of the committee to be held on September 27, 1970. On that date a meeting was held with Chairman Taylor and seven purported committee members present in person, along with two purported committee members represented by proxy. These individuals were supposed to have constituted a majority of the sixteen members of the executive committee who represent the eight magisterial districts of Mingo County.

Among other business that took place at this "meeting," the committee compiled a list and requested the appointment of the aforementioned election officials. The list was prepared and signed by all nine individuals present in person or by proxy, and by Taylor. On October 6, 1970, at a session of the Mingo County Court, at which two commissioners were present, relator Taylor appeared and presented and filed with the court, in accordance with law, the aforementioned list. Taylor was then informed that the court had already accepted another list of Republican election officials submitted by one Morris C. Murphy, the court having apparently approved that

list on Saturday, October 3, 1970. Taylor informed the court that the list, in his opinion, was invalid and unauthorized because it was presented by a minority of the executive committee and that the court's action was unlawful because the law required a court meeting for the appointment of election officers to be held on the first Tuesday of the month preceding the date on which any election is to be held, that meeting date being October 6. The respondent commissioners thereupon reaffirmed their action of the previous Saturday and, consequently, rejected the list presented by Taylor.

The relators maintain that the list so approved is invalid as it was not compiled and approved by a majority and legal quorum of the executive committee and that, thus, the county court's action was improper, illegal and unlawful. Relators urge this Court to compel the Mingo County Court to accept the list presented by relator Taylor. On October 13, 1970, we awarded the rule returnable October 20, 1970. The matter was continued to October 21, 1970, at which time it was submitted for decision upon oral argument and briefs. On October 27, 1970, for reasons hereinafter stated, this Court entered an order denying the relief prayed for. Order Book 71, Page 77. The purpose of this opinion is to state the reasons for the Court's decision.

Upon the filing of respondents' answer, briefs and exhibits of both sides, and pertinent depositions, coupled with relators' petition, additional matters came to light which cast doubt on relators' case, and, subsequently, became the basis for our decision. In particular, it appears that neither the meeting convened by Taylor nor the one convened by Murphy was a valid meeting of the Republican Executive Committee since a majority of members was not present at either meeting.

One of the parties present at Taylor's meeting was Jean S. Jewell, one of the relators in this case, who identifies herself as Secretary of the executive committee. According to respondents' answer, it is alleged that Jewell resigned her office as committeewoman on March 13, 1969, in order to accept a position as clerk in the Mingo County Offices of District Two of the West Virginia Department of Highways. Filed as

Respondents' Exhibit No. 2 is the original of the minutes of a Republican Executive Committee meeting apparently held June 5, 1969, which contains the following statement:

> Jean Jewell resigned as Committee [*sic*] March 13 [*sic*] Sadie Sturgill to replace on Committee.

Filed as Respondents' Exhibit No. 3 is a statement of Jean Jewell taken in connection with a Department of Highways investigation wherein she was asked the following question and gave the following answer:

Question: The 5th. Allegation is that you are holding the Office of Committee Woman for the Williamson District while you are employed by the State Road Commission [Department of Highways]. Do you still hold the office of Committee Woman?

Answer: *No. I resigned the office of Committee Woman on March 13, 1969*, the first day of my employment with the S.R.C. (Emphasis added.)

The statement was signed as being true by Jewell. Relators maintain that Jewell is still a member of the committee even though, as relators admit, "she did write a resignation." Relators' rationale is that the resignation "was never legally submitted or tendered to the Committee or acted upon by it at any legal meeting." The heretofore quoted portion of the committee minutes seems to refute this, but relators offer an explanation for this apparent conflict. Mrs. Loie Bowes served as secretary and kept the minutes of the meetings called by Taylor, including the minutes in question. After a split in the committee, Mrs. Bowes left and kept the minutes only of the opposing (or Murphy) faction of the committee. In a deposition, Mrs. Bowes stated that her minutes were never read at subsequent meetings for approval, correction or deletion, and, thus, the June 5, 1969, notes are probably, according to relators, "inaccurate in many material respects" and that this Court should not accept them to impeach evidence offered by persons in attendance at the meeting. Relators point out that even the date of the meeting is incorrectly noted in the minutes.

If Jean Jewell did not resign, as relators maintain she did not, this Court is at a loss for an explanation as to why she told the Department of Highways investigator in her statement that she had resigned and why it appears in the minutes of a committee meeting that she resigned. Even accepting relators' allegation that the minutes may be "inaccurate in many material respects," something must have prompted Mrs. Bowes to write down that "Jean Jewell resigned as Committee March 13," and we conclude that that something was Jean Jewell's resignation, the same event that prompted her to make the statement to the Department of Highways investigator. In her deposition, Jewell maintains she wrote out a resignation to satisfy the Department of Highways, and that thereafter she kept the resignation in her personal possession, never tendering it to the committee. She said she was advised by a committee member not to submit it.

There is further evidence of Jean Jewell's resignation in the record. As quoted above, the June 5, 1969, minutes reflect that Sadie Sturgill was appointed as a committee member, apparently as Jewell's replacement. (As mentioned previously, there are two representatives from each magisterial district, one Billie E. Gibson being the male committee member from Williamson District. Logically, only one of these two ladies, Jewell or Sturgill, could be the other representative.) Filed with respondents' answer are Exhibits 4, 5 and 6 which are proxy statements signed by Sadie Sturgill. One is for a meeting held January 28, 1970, giving her proxy to Jean Jewell. The second gives Jean Jewell her proxy for a meeting held April 6, 1970. The third grants Sturgill's proxy to one Wallace Jewell for a January 4, 1970, meeting.

We are aware that relators deny that Sadie Sturgill was ever a "legal Committeewoman," but we find this denial without merit in light of the facts just mentioned. While we do not pass on whether Sadie Sturgill necessarily was a legally appointed committee member, we do feel that the fact that the minutes expressly reflect her appointment as a committee member, and the fact that the aforementioned proxies were contained in the committee records as kept by Mrs.

Bowes bear heavily on the question of whether or not Jean S. Jewell resigned as committeewoman.

In addition to all of this, it is admitted by respondents that the list of election officers submitted by Morris Murphy was also an invalid list since it was not signed by a majority of members, one reason being that of the nine individuals signing the Murphy list, one, Grace Howard, had signed both lists (Murphy's and Taylor's), and since she had signed the Taylor list first, her approval of the Murphy list was ineffective. Thus, there is no doubt whatsoever that the Murphy list was invalid.

With respect to the applicable law in this case, it is first of all clear that before any action taken by a political executive committee is lawful, there must first be a quorum present at the meeting, and it is equally clear that a quorum is a majority of members. *State ex rel. Bell v. Clay County Court*, 141 W. Va. 685, 92 S.E.2d 449. It is likewise settled that a county court has a mandatory duty to accept a list of election officials approved by such a legally constituted meeting of an executive committee. *State ex rel. Bullard v. Clay County Court*, 141 W.Va. 675, 92 S.E.2d 452, and cases cited therein. Conversely, a county court cannot be compelled to accept a list not lawfully submitted. *State ex rel. Robertson v. Kanawha County Court*, 131 W.Va. 521, 48 S.E.2d 345; *Brawley v. Kanawha County Court*, 117 W.Va. 421, 187 S.E. 328. Furthermore, in this type of case, as in any other case wherein a writ of mandamus is sought, the party seeking the writ against the county court must establish a clear legal right to the relief prayed for. *State ex rel. Evans v. Kennedy*, 145 W.Va. 208, 115 S.E.2d 73.

The law with respect to resignation by political executive committee members is quite clear also. In *State ex rel. Bell v. Clay County Court*, 141 W.Va. 685, 92 S.E.2d 449, this Court held that an unsubmitted and unaccepted resignation in such a case as this is ineffective. In that case, a committee member was prevented from reading his resignation, and consequently he left the meeting taking the resignation with him. A minority of the committee members who remained at the meeting then accepted the resignation. This Court correctly held that

the record did not indicate that the resignation was submitted or that a legal majority had accepted it. In this case, we have the statement of Jean Jewell that she had resigned, but, more importantly, the minutes of a legally constituted meeting which showed her resignation and the apparent appointment of her replacement which expressly and impliedly shows a submission and acceptance of Jean Jewell's resignation, notwithstanding relators' advantageous pronouncements to the contrary.

It is urged by respondents that they concluded, as we have, that both lists submitted to them were invalid, and, furthermore, that they were left with no choice but to approve a list of their own. Of course, there is precedent for this action on the part of respondents. In the strikingly similar case of *State ex rel. Goodwin v. Putnam County Court*, 147 W.Va. 62, 125 S.E.2d 417, this Court held that a county court is under no compulsion or obligation to appoint or approve an invalid list, such as we have here. In that case, the Court was presented with a situation involving two factions of a political executive committee having submitted two lists of election officers to the county court for approval. The court accepted the list as submitted by one faction. This Court held that it was quite proper for a county court to go behind the certification of a county chairman to ascertain the validity of a list. The Court, relying on *State ex rel. Evans v. Kennedy*, 145 W. Va. 208, 115 S.E.2d 73, an excellent opinion written by Judge Haymond, held that:

> * * * If one of the lists meets the requirements of law the county court shall appoint the election officers so requested on such list, *but if neither list is proper nor legal, the county court should refuse both lists and appoint qualified persons of its own selection to serve as election officers.* (Emphasis added.)

As can be seen, the Court held that the action of the county court in approving one of the lists constituted action by the court of adopting one of the lists as its own, and, thus, the court had "appoint[ed] qualified persons of *its* own selection to serve as election officers." We held through our order that in the case at bar the Mingo County Court, realizing both lists

to be invalid, adopted one list as its own, and, therefore, the persons appointed by the court from that list were of the court's own selection.

In summary, we held that the Morris Murphy list was invalid since a majority of the committee had not approved that list; that Jean S. Jewell had submitted her resignation as committeewoman and that the resignation was lawfully accepted by the committee; that by reason of Jewell's resignation, a majority was not present at the Buddy Taylor meeting, and, thus, the Taylor list was invalid; that the Mingo County Court was not obligated to accept either list; and that the action of the Mingo County Court in approving the Murphy list constituted action on the part of the court of adopting the list as its own selection of election officers.

Based on all of the foregoing, we held that the relators in this case did not establish a clear legal right to the relief sought, and, therefore, the writ of mandamus prayed for was denied.

*Writ denied.*